| Fill in this information to identify the case: |
|---|
| Debtor 1  Cornelious Williams |
| Debtor 2 (Spouse, if filing) |
| United States Bankruptcy Court  Northern District of Illinois |
| Case number: 19-02841 |

FILED
U.S. Bankruptcy Court
Northern District of Illinois
2/21/2019
Jeffre[y]


EXHIBIT A

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Tall Pines at Grande Park Attached HOA
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Tall Pines at Grande Park Attached HOA
Name
128 S. County Farm Road
Wheaton, IL 60187

Contact phone ____630-690-6446____
Contact email ____ben@keaycostello.com____

Where should payments to the creditor be sent? (if different)
Name _____
Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                  Proof of Claim                  page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |
| 7. How much is the claim? | $ 1169.00 | Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense | |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 243680.00<br>**Amount of the claim that is secured:** $ 1169.00<br>**Amount of the claim that is unsecured:** $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____%<br>☑ Fixed<br>☐ Variable | |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ | |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ | |

Official Form 410    Proof of Claim    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. Check all that apply: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  2/21/2019
MM / DD / YYYY

/s/ Benjamin J. Rooney

Signature

Print the name of the person who is completing and signing this claim:

Name: Benjamin J. Rooney
First name   Middle name   Last name

Title:

Company: Keay & Costello, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 128 S. County Farm Road
Number  Street
Wheaton, IL 60187
City  State  ZIP Code

Contact phone: 630-690-6446   Email: ben@keaycostello.com

Official Form 410   Proof of Claim   page 3

DATE: 2/13/19 TIME: 8:58 AM         Tall Pines Attached Homes                Page: 2

FINANCIAL TRANSACTIONS - 02/13/19

12913 White Pine Way
Cornelious Williams PreBK
Unit ID: TPH12913WP
STATUS: 20 - First Warning
START DATE: 04/09/18    PREPAID BAL:    0.00

| DATE | PAYMT AMT | CHECK # | DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 010119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 563.00 |
| 011819 | | EXPENSE ADJ | | 01 | | Late Fees | 10.00 | 573.00 |
| 011819 | | EXPENSE ADJ | | 03 | | Admin. Fees | 50.00 | 623.00 |
| 020119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 769.00 |
| 2-18-19 | | Bankruptcy legal fee | | | | | 400.00 | 1,169.00 |

DATE: 2/13/19  TIME: 8:58 AM          **Tall Pines Attached Homes**                    Page: 1

**FINANCIAL TRANSACTIONS - 02/13/19**

12913 White Pine Way
Cornelious Williams PreBK
Unit ID: TPH12913WP
STATUS: 20 - First Warning
START DATE: 04/09/18   PREPAID BAL:   0.00

| DATE | PAYMT AMT | CHECK # | DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 040918 | | EXPENSE ADJ | | 05 | | Attorney Fees | 549.00 | 0.00 |
| 040918 | K&C inv84955 | | | | | | | |
| 050118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 146.00 |
| 050118 | | APPLY PREPAYMNT | | A1 | | ASSESSMENT | (146.00) | 146.00 |
| 050118 | | | | 05 | | Attorney Fees | (403.00) | 146.00 |
| 051718 | | APPLY LATE FEE | | 01 | | Late Fees | 10.00 | 156.00 |
| 060118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 302.00 |
| 061818 | | APPLY LATE FEE | | 01 | | Late Fees | 10.00 | 312.00 |
| 061818 | Action taken: 20 - First Warning | | | | | | | |
| 061818 | | APPLY ADMIN FEE | | 03 | | Admin. Fees | 25.00 | 337.00 |
| 061918 | 300.00 | 995057 | 061918 | A1 | | ASSESSMENT | (146.00) | 37.00 |
| 061918 | | | | 03 | | Admin. Fees | (25.00) | |
| 061918 | | | | 05 | | Attorney Fees | (129.00) | |
| 070118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 183.00 |
| 071618 | | APPLY LATE FEE | | 01 | | Late Fees | 10.00 | 193.00 |
| 080118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 339.00 |
| 081518 | 150.00 | 995063 | 081518 | A1 | | ASSESSMENT | (150.00) | 189.00 |
| 081618 | Action taken: 10 - Late Notice | | | | | | | |
| 090118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 335.00 |
| 091818 | Action taken: 20 - First Warning | | | | | | | |
| 091818 | | APPLY ADMIN FEE | | 03 | | Admin. Fees | 25.00 | 360.00 |
| 100118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 506.00 |
| 101018 | | EXPENSE ADJ | | 05 | | Attorney Fees | 100.00 | 606.00 |
| 101018 | review fc file, letter to client KC inv 27758 | | | | | | | |
| 102218 | 481.00 | 995071 | 102218 | A1 | | ASSESSMENT | (434.00) | 125.00 |
| 102218 | | | | 03 | | Admin. Fees | (25.00) | |
| 102218 | | | | 05 | | Attorney Fees | (22.00) | |
| 110118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 271.00 |
| 120118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 146.00 | 417.00 |

THIS INSTRUMENT PREPARED
BY AND SHOULD BE RETURNED
TO

Brian Meltzer
MELTZER, PURTILL & STELLE LLC
1515 East Woodfield Road
Second Floor
Schaumburg, Illinois 60173-5431

3 of 3

201400009405

DEBBIE
GILLETTE
KENDALL COUNTY, IL

RECORDED: 7/11/2014 1:42 PM
DEC: 97.00  RHSPS FEE: 10.00
PAGES: 52

ABOVE SPACE FOR RECORDER'S USE ONLY

# DECLARATION FOR TALL PINES AT GRANDE PARK ATTACHED HOMES

## TABLE OF CONTENTS

| | |
|---|---:|
| **ARTICLE ONE**   Definitions | 2 |
| 1 01  ACT | 2 |
| 1 02  ASSOCIATION | 2 |
| 1 03  BACKUP SPECIAL SERVICE AREA | 2 |
| 1 04  BOARD | 2 |
| 1 05  BY-LAWS | 2 |
| 1 06  CHARGES | 2 |
| 1 07  COMMON AREA | 2 |
| 1 08  COMMON ASSESSMENT | 2 |
| 1 09  COMMON EXPENSES | 2 |
| 1 10  COMMUNITY ASSOCIATION | 3 |
| 1 11  COMMUNITY DECLARATION | 3 |
| 1 12  CONDOMINIUM ASSOCIATION | 3 |
| 1 13  COST SHARING AGREEMENT | 3 |
| 1 14  COUNTY | 3 |
| 1 15  DECLARANT | 3 |
| 1 16  DECLARATION | 3 |
| 1 17  DESIGNATED BUILDER | 3 |
| 1 18  DEVELOPMENT AREA | 3 |
| 1 19  FIRST MORTGAGEE | 3 |
| 1 20  HOME | 3 |
| 1 21  HOME EXTERIOR | 3 |
| 1 22  LOT | 3 |
| 1 23  MUNICIPALITY | 4 |
| 1 24  OWNER | 4 |
| 1 25  PARCEL | 4 |
| 1 26  PERSON | 4 |
| 1 27  PREMISES | 4 |
| 1 28  RECORD | 4 |
| 1 29  RESIDENT | 4 |
| 1 30  TURNOVER DATE | 4 |
| 1 31  VOTING MEMBER | 4 |

{33299 009 01313875 DOC 2 }

person being adjudged liable for criminal conduct, gross negligence or fraud in the performance of his duties as such director or officer

5 07 **MANAGING AGENT** The Declarant (or an entity affiliated with the Declarant) may be engaged by the Association to act as the managing agent for the Association and as managing agent shall be paid a reasonable fee for its services as fixed by a written agreement between the Association and the Declarant (or an entity controlled by the Declarant) Any management agreement entered into by the Association prior to the Turnover Date shall have a term of not more than two years and shall be terminable by the Association without payment of a termination fee on ninety (90) days written notice

5 08 **REPRESENTATION** The Association shall have the power and right to represent the interests of all of the Owners in connection with claims and disputes affecting the Common Area and Home Exteriors Without limiting the foregoing, the Association shall have the power after the Turnover Date to settle warranty disputes or other disputes between the Association, the Owners, and the Declarant affecting the construction, use or enjoyment of the Common Area and Home Exteriors and any such settlement shall be final and shall bind all of the Owners

5 09 **DISSOLUTION** To the extent permissible under applicable law, in the event of the dissolution of the Association, any Common Area owned by the Association shall be conveyed to the Owners as tenants in common

5 10 **LITIGATION** No judicial or administrative proceedings shall be commenced or prosecuted by the Association without first holding a special meeting of the members and obtaining the affirmative vote of Voting Members representing at least seventy-five percent (75%) of the Parcels to the commencement and prosecution of the proposed action This Section shall not apply to (a) actions brought by the Association to enforce the provisions of this Declaration, the By-Laws or rules and regulations adopted by the Board (including, without limitation, an action to recover Charges or to foreclose a lien for unpaid Charges) or (b) counterclaims brought by the Association in proceedings instituted against it

## ARTICLE SIX
### Assessments

6 01 **PURPOSE OF ASSESSMENTS** The assessments levied by the Association shall be exclusively to administer the affairs of the Association, to pay the Common Expenses, and to accumulate reserves for any such expenses

6 02 **COMMON ASSESSMENT** Each year on or before December 1, the Board shall adopt and furnish each Owner with a budget for the ensuing calendar year, which shall show the following with reasonable explanations and itemizations.

(a) The estimated Common Expenses,

(b) The estimated amount, if any, to maintain adequate reserves for Common Expenses including, without limitation, amounts to maintain the Capital Reserve,

(c) The estimated net available cash receipts sources other than assessments, including, without limitation, pursuant to the Cost Sharing Agreement, plus the estimated excess funds, if any, from the current year's assessments,

(d) The amount of the "Common Assessment" payable by the Owners, which is hereby defined as the amount determined in (a) above, plus the amount determined in (b) above, minus the amount determined in (c) above,

(e) That portion of the Common Assessment which shall be payable by the Owner of each Parcel which is subject to assessment hereunder each month until the next Common Assessment or revised Common Assessment becomes effective, which monthly amount shall be equal to the Common Assessment, divided by the number of Parcels, divided by twelve (12), so that each Owner shall pay equal Common Assessments for each Parcel owned

Anything herein to the contrary notwithstanding the provisions of this paragraph shall apply with respect to the period prior to the Turnover Date Any budget ("Stabilized Budget") prepared by the Board prior to the Turnover Date shall be based on the assumptions that (i) the Development has been fully constructed as shown on Declarant's then current plan for the Development ("Declarant's Development Plan") and (ii) all proposed Homes have been sold and are occupied  The Declarant's Development Plan shall be kept on file with the Association and may be modified from time to time by Declarant  Prior to the Turnover Date, each owner of a Parcel (other than Declarant) shall pay a Common Assessment equal to the total cash needs, as shown on the Stabilized Budget, divided by the total number of proposed Homes, as shown on the Declarant's Development Plan, divided by 12, so that each Owner (other than Declarant) will pay, with respect to each Parcel owned, a monthly Common Assessment equal to what such Owner would be paying with respect to the Owner's Parcel if the Development were fully constructed pursuant to the Declarant's Development Plan and all proposed Homes have been built and are occupied  The Declarant shall not be obligated to pay any Common Assessments to the Association prior to the Turnover Date  However, if with respect to the period commencing on the date of the Recording of this Declaration and ending on the Turnover Date, the amount of Common Assessments billed to Owners (other than Declarant), regardless of whether paid by Owners, plus working capital contributions under Section 6 07 payable by Owners (other than Declarant) less the portions thereof which are to be added to Reserves is less than the Common Expenses actually incurred with respect to such period, then the Declarant shall pay the difference to the Association  From time to time prior to the Turnover Date, the Declarant may (but shall not be obligated to) advance to the Association funds to be used by the Association to pay its expenses ("Advanced Funds")  A final accounting and settlement of the amount, if any, owed by Declarant to the Association shall be made as soon as practicable after the Turnover Date  If, and to the extent that, the final accounting determines that the Advanced Funds, if any, are less than the amount owed by the Declarant to the Association pursuant to this Section, the Declarant shall pay the difference to the Association  If, and to the extent that, the final accounting determines that the Advanced Funds, if any, exceed the amount owed by the Declarant to the Association pursuant to this Section, then the Association shall pay such excess to the Declarant

6 03 PAYMENT OF COMMON ASSESSMENT  On or before the 1st day of January of the ensuing calendar year, and on the first day of each month thereafter until the effective date of the next annual or revised Common Assessment, each Owner of a Parcel which

is subject to assessment shall pay to the Association, or as the Board may direct, that portion of the Common Assessment which is payable by each Owner of a Parcel under Section 6 02 For purposes hereof, a Parcel shall only be subject to assessment hereunder from and after such time as a temporary, conditional or permanent occupancy certificate has been issued with respect to the Home constructed thereon

6 04 REVISED ASSESSMENT If the Common Assessment proves inadequate for any reason (including nonpayment of any Owner's assessment) or proves to exceed funds reasonably needed, then the Board may increase or decrease the assessment payable under Section 6 02(e) by giving written notice thereof (together with a revised budget and explanation for the adjustment) to each Owner not less than ten (10) days prior to the effective date of the revised assessment

6 05 SPECIAL ASSESSMENT After the Turnover Date, the Board may levy a special assessment as provided in this Section (i) to pay (or build up reserves to pay) expenses other than Common Expenses incurred (or to be incurred) by the Association from time to time for a specific purpose including, without limitation, to make alterations, additions or improvements to the Common Area, or any other property owned or maintained by the Association, or (ii) to cover an unanticipated deficit under the prior year's budget Any special assessment shall be levied against all of Parcels in equal shares No special assessment shall be adopted without the affirmative vote of Voting Members representing at least two-thirds (2/3) of the votes cast on the question The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the specific purpose and reasons therefor in reasonable detail, and the special assessment shall be payable in such manner and on such terms as shall be fixed by the Board Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the prior year's budget) shall be segregated in a special account and used only for the specific purpose set forth in the notice of assessment

6 06 CAPITAL RESERVE The Association shall segregate and maintain a special reserve account to be used solely for making capital expenditures in connection with the Common Area and those portions of the Home Exteriors with respect to which the Association is responsible for repair and replacement (the "Capital Reserve") The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Common Area, the portions of the Home Exteriors for which the Association is responsible and other property owned by the Association and periodic projections of the cost of anticipated major repairs or replacements to the Common Area, the portions of the Home Exteriors for which the Association is responsible and the purchase of other property to be used by the Association in connection with its duties hereunder The Capital Reserve may be built up by separate or special assessments or out of the Common Assessment as provided in the budget Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to the Common Areas, Home Exteriors and other property owned by the Association, shall be held by the Association as agent and trustee for the Owners of Homes with respect to which the Capital Reserve is held and such accounts shall be deemed to have been funded by capital contributions to the Association by the Owners The budgets which will be adopted from time to time by the Board prior to the Turnover Date shall include reserve buildups which the Board deems to be appropriate based on information available to the Board Boards elected by the Owners after the Turnover Date may use different approaches from those used by Boards appointed by the Declarant for the buildup of reserves or may choose not to provide for the buildup of reserves for certain capital expenditures or deferred maintenance for

repairs or replacements of the Common Area, those portions of the Parcels and Home Exteriors for which the Association is responsible for repair and replacement and other property owned by the Association If the Board chooses not to provide for the buildup of reserves for a particular anticipated expenditure or if the buildup of reserves that the Board provide for in the budget does not result in sufficient funds to pay for the expenditure when the expenditure must be made, then (i) neither the Board nor any of its past or present members shall be liable to the Association or the Owners for failing to provide for sufficient reserves and (ii) the Board shall have the right and power to either levy a separate or special assessment to raise the funds to pay the expenditure or to borrow funds to pay the expenditure and repay the borrowed funds out of future Common Assessments, separate assessments or special assessments

6 07  INITIAL CAPITAL CONTRIBUTIONS  Upon the closing of the sale of each Home by the Declarant to a purchaser for value, the purchasing Owner shall make a capital contribution to the Association in an amount equal to two (2) monthly installments of the then current Common Assessment for that Home and an amount equal to the current annual fire and extended coverage insurance premium allocable to the Home, which amounts shall be held and used by the Association for its working capital needs (and not as an advance payment of the Common Assessment) In addition, the purchasing Owner shall pay to the Association the sum of One Hundred Dollars ($100 00), which shall be added to the Capital Reserve In addition to the amounts payable to the Association, the purchasing Owner shall make a capital contribution to the Community Association in an amount equal to forty percent (40%) of the then current annual assessment payable with respect to the Dwelling under the Community Declaration, which amount shall be held and used by the Community Association for its working capital needs (and not as an advance payment of the Assessment under the Community Declaration)

6 08  PAYMENT OF ASSESSMENTS  Assessments levied by the Association shall be collected from each Owner by the Association and shall be a lien on the Owner's Parcel and also shall be a personal obligation of the Owner in favor of the Association, all as more fully set forth in Article Seven

ARTICLE SEVEN
Collection of Charges and
Remedies for Breach or Violation

7 01  CREATION OF LIEN AND PERSONAL OBLIGATION  The Declarant hereby covenants, and each Owner of a Parcel by acceptance of a deed therefor (whether or not it shall be so expressed in any such deed or other conveyance) shall be and is deemed to covenant and hereby agrees to pay to the Association all Charges made with respect to the Owner or the Owner's Parcel  Each Charge, together with interest thereon and reasonable costs of collection, if any, as hereinafter provided, shall be a continuing lien upon the Parcel against which such Charge is made and also shall be the personal obligation of the Owner of the Parcel at the time when the Charge becomes due  The lien or personal obligation created under this Section shall be in favor of and shall be enforceable by the Association

7 02  COLLECTION OF CHARGES  The Association shall collect from each Owner all Charges payable by such Owner under this Declaration

7 03  NON-PAYMENT OF CHARGES  Any Charge which is not paid to the Association when due shall be deemed delinquent  Any Charge which is delinquent for thirty

(30) days or more shall bear interest at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, from the due date to the date when paid. The Association may (i) bring an action against the Owner personally obligated to pay the Charge to recover the Charge (together with interest, costs and reasonable attorney's fees for any such action, which shall be added to the amount of the Charge and included in any judgment rendered in such action), and (ii) enforce and foreclose any lien which it has or which may exist for its benefit. In addition, the Board may add a reasonable late fee to any installment of an assessment which is not paid within thirty (30) days of its due date. No Owner may waive or otherwise escape personal liability for the Charges hereunder by nonuse of the Common Area or by abandonment or transfer of his Parcel.

7.04 <u>LIEN FOR CHARGES SUBORDINATED TO MORTGAGES</u>. The lien for Charges, provided for in Section 7.01, shall be subordinate to the First Mortgagee's mortgage on the Parcel which was Recorded prior to the date that any such Charge became due. Except as hereinafter provided, the lien for Charges, provided for in Section 7.01, shall not be affected by any sale or transfer of a Parcel. Where title to a Parcel is transferred pursuant to a decree of foreclosure of the First Mortgagee's mortgage or by deed or assignment in lieu of foreclosure of the First Mortgagee's mortgage, such transfer of title shall extinguish the lien for unpaid Charges which became due prior to the date of the transfer of title. However, the transferee of the Parcel shall be personally liable for his share of the Charges with respect to which a lien against his Parcel has been extinguished pursuant to the preceding sentence where such Charges are reallocated among all the Owners pursuant to a subsequently adopted annual or revised Common Assessment or special assessment, and non-payment thereof shall result in a lien against the transferee's Parcel, as provided in this Article.

7.05 <u>SELF-HELP BY BOARD</u>. In the event of a violation or breach by an Owner of the provisions, covenants or restrictions of the Declaration, the By-Laws, or rules or regulations of the Board, where such violation or breach may be cured or abated by affirmative action, then the Board, upon not less than ten (10) days' prior written notice to the Owner, shall have the right to enter upon that part of the Premises where the violation or breach exists to remove or rectify the violation or breach, provided, that, if the violation or breach exists within a Home, judicial proceedings must be instituted before any items of construction can be altered or demolished.

7.06 <u>OTHER REMEDIES OF THE BOARD</u>. In addition to or in conjunction with the remedies set forth above, to enforce any of the provisions contained in this Declaration or any rules and regulations adopted hereunder the Board may levy a fine or the Board may bring an action at law or in equity in the name of the Association against any person or persons violating or attempting to violate any such provision, either to restrain such violation, require performance thereof, to recover sums due or payable (including fines) or to recover damages, and against the Parcel to enforce any lien created hereunder, and failure by the Association to enforce any provision shall in no event be deemed a waiver of the right to do so thereafter.

7.07 <u>COSTS AND EXPENSES</u>. All costs and expenses incurred by the Board in connection with any action, proceedings or self-help in connection with exercise of its rights and remedies under this Article, including, without limitation, court costs, attorneys' fees and all other fees and expenses, and all damages, liquidated or otherwise, together with interest thereon at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, until paid, shall be charged to and assessed against the defaulting Owner, and the Association shall have a lien for all the same, upon his Parcel as provided in Section 7.01.

  7 08 ENFORCEMENT BY OWNERS Enforcement of the provisions contained in this Declaration and the rules and regulations adopted hereunder may be by any proceeding at law or in equity by any aggrieved Owner against any person or persons violating or attempting to violate any such provisions, either to restrain such violation or to recover damages, and against a Parcel to enforce any lien created hereunder

  7 09 ENFORCEMENT BY MUNICIPALITY The covenants and conditions set forth in this Section 7 09 are intended to, and shall inure to the benefit of the Municipality

  (a) In the event that the Association, fails to perform any of its obligations required to be performed by it pursuant to the provisions of this Declaration and such delinquency shall exist on the part of the Association for a period of fifteen (15) days after the date of delivery by the Municipality to the Association or such Owner of written notice advising the Association of the existence and nature of such delinquency, the Municipality shall have the right, but not the obligation, to either (i) perform the obligations required to be performed by the Association pursuant to this Declaration or (ii) establish a Special Service Area (herein defined) to perform the obligations required to be performed by the Association pursuant to this Declaration Notwithstanding the foregoing, in the case of an emergency involving an immediate threat to the health or safety of persons in, on or about the Premises, the circumstances of which do not reasonably permit the use of the aforesaid process of notice and cure period, as determined in good faith by an official of the Municipality, the Municipality may undertake such remedial work as it is necessary to correct a condition involving a danger to the public health or safety upon such notice, in any, as is reasonable under the circumstances In the event the Municipality elects to do so, the Association shall pay promptly to the Municipality the amount of the costs and expenses incurred by the Municipality in the performance of such work, including compensation for staff time and the use of equipment owned by the Municipality, as well as materials, outside services and attorney's fees In the event the Municipality performs any of the Association's obligations and the Association fails to pay the Municipality any costs and expenses it incurred aforesaid, within thirty (30) days after the date of the Municipality's demand for payment or date of any statement, the Municipality shall have the right to levy an assessment on each Parcel for the costs and expenses incurred by it in the performance of such work to the same extent and as fully as the Association might do pursuant to the provisions contained herein Should any Owner fail to pay to the Municipality such Owner's portion of any assessment levied pursuant to this paragraph upon the due date thereof, then the Municipality shall have the right to exercise all rights, powers, privileges and remedies granted to the Association by this Declaration, and any other remedies provided by law This paragraph is not a limitation on other remedies that may be pursued by the Municipality

  (b) Each Owner, by acceptance of a deed to a Parcel, consents to the creation of any Special Service Area by the Municipality to perform any of the maintenance or obligations of the Association or Owners as set forth in this Declaration, including but not limited to maintaining the Common Area Special Service Area in this Section shall have the same meaning as set forth in 35 ILCS 200/27-5, as amended, revised and replaced If a Special Service Area is created, the Association shall modify its budget to reflect the elimination of the responsibilities

  (c) Without limiting the foregoing, the Municipality has established the Backup Special Service Area which gives the Municipality the power to levy taxes to pay the cost of maintaining the Common Area if the Association fails to do so and the Municipality chooses to furnish such